**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ADNAN ZAIDI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1487-HE** |
| | ) | |
| **TODD BLANCHE[1] et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Adnan Zaidi, a noncitizen proceeding with counsel,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge Joe Heaton referred the matter to the undersigned magistrate judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondents filed a Response. (ECF No. 11). Petitioner filed a Reply. (ECF No. 12). At the Court's direction, Respondents later filed a Notice regarding Petitioner's detention and removal status. (ECF No. 14). The matter is at issue.

For the reasons set forth below, the undersigned recommends the Court **GRANT** Petitioner's request for habeas relief, order his release within three business days subject to an appropriate Order of Supervision (OOS), and **ENJOIN** Respondents from re-detaining Petitioner on the basis of changed circumstances unless and until they obtain a travel document for his removal.

[1] The Government did not file a Response on behalf of Warden Fred Figueroa, who is not a federal official. (ECF No. 11:1 n.1).

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. BACKGROUND

Petitioner is a native and citizen of Pakistan who entered the United States on a student visa on or about August 14, 1992. (ECF No. 11-1:2). In 2004, Petitioner was convicted in this Court of making a false claim in violation of 18 U.S.C. § 287 and sentenced to five months' imprisonment. (ECF No. 11-3:3). The Department of Homeland Security (DHS) then charged Petitioner as removable under §§ 237(a)(1)(C)(i) and 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA).[3] *Id.* An Immigration Judge (IJ) ordered Petitioner removed to Pakistan, and his removal order became administratively final on February 22, 2007, when the Board of Immigration Appeals dismissed his appeal. (ECF No. 11-5:4).

This is not Petitioner's first habeas petition in this Court. In 2007, while detained by U.S. Immigration and Customs Enforcement (ICE), Petitioner challenged his continued detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Zaidi v. Clement*, No. CIV-07-1119-HE, 2008 WL 906192, at *1 (W.D. Okla. Mar. 31, 2008).[4] ICE represented in that case that it expected Pakistan to issue travel documents at a November 14, 2007 meeting and that Petitioner would be placed on a flight to Pakistan the next day. *Id.* at *1 n.1. Instead, "[u]nanticipated delays in coordinating with the Pakistan embassy prevented ICE from obtaining the required travel documents," and ICE released Petitioner on an OOS on January 29, 2008. *Id.* at *1 n.1, *2. The OOS stated that Petitioner was released "[b]ecause the Service has not effected [his] deportation or removal during the period

---

[3] These sections are codified at 8 U.S.C. § 1227(a)(1)(C)(i), which renders deportable a nonimmigrant who has failed to maintain his nonimmigrant status, and 8 U.S.C. § 1227(a)(2)(A)(i), which renders deportable a noncitizen convicted of a crime involving moral turpitude within the specified period.

[4] The Court may take judicial notice of its own records in Petitioner's prior habeas case. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

prescribed by law." *Zaidi v. Clement*, No. CIV-07-1119-HE, ECF No. 20-1:3 (W.D. Okla. Feb. 1, 2008). In June 2011, ICE was informed that Pakistan would not issue travel documents for Petitioner. (ECF No. 11-1:3). Petitioner then reported to ICE as required for nearly eighteen years, and Respondents do not contend that he violated any condition of his release. (ECF No. 1:2). Petitioner has been married to a United States citizen since 1999, has four United States citizen children, and has no passport or birth certificate from Pakistan. (ECF No. 1:2, 10).

On December 29, 2025, ICE took Petitioner into custody when he appeared for a routine check-in. (ECF No. 11-1:2-3). ICE began a new travel document request in January 2026 and mailed Petitioner's application to the Pakistani Embassy on March 19, 2026. (ECF No. 11-1:3). ICE allegedly conducted a 90-day custody interview that day and served Petitioner with a decision to continue his detention on March 24, 2026. (ECF No. 14-1:2). On or about April 16, 2026, ICE's Headquarters Post-Order Detention Unit (HQPDU) supposedly determined that, "because of the changed circumstances, there was and is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future." (ECF No. 11-1:3).[5] As of September 25, 2026, Pakistan was "still

[5] The Court's Order for Response directed Respondents to file copies of the documents discussed in their Response, including any related past orders of supervision, and to identify the regulatory basis for the revocation of Petitioner's release. (ECF No. 9:2). Respondents did neither. They did not file Petitioner's prior OOS, which the undersigned located only by reviewing the docket in Petitioner's 2007 habeas case. Nor did they file any notice of revocation, HQPDU's supposed April 16, 2026 determination, or any record of the 90-day custody interview, the decision to continue detention that Petitioner allegedly signed, the 180-day custody interview, or the July 2026 recommendation to continue detention on which their declarant relies. (ECF No. 14-1:2-3). Respondents may possess records documenting these events, but they have not produced them, and "an agency's obligation to comply with its own regulations cannot be discharged by silence." *Wonsehleay v. Mullin*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (W.D. Okla. Aug. 26, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)), *adopted*, 2026 WL 2662005 (W.D. Okla. Sept. 9, 2026).

verifying" Petitioner's identity and citizenship. (ECF No. 14-1:3).[6] Petitioner remains detained at the Diamondback Correctional Facility in Watonga, Oklahoma, without a travel document. (ECF No. 14:1).

## II. PETITIONER'S CLAIMS

Petitioner asserts five claims for relief: (1) declaratory relief regarding the lawfulness of his detention; (2) a violation of 8 U.S.C. § 1231 and 8 C.F.R. § 241.13(i)(2)-(3); (3) a violation of the Due Process Clause of the Fifth Amendment; (4) a violation of the Administrative Procedure Act (APA); and (5) a violation of the *Accardi* doctrine. (ECF No. 1:24-28). Petitioner seeks his immediate release, as well as declaratory relief, an order barring his transfer out of Oklahoma, injunctions against his re-detention absent a travel document and against his removal to a third country without additional process, and attorney's fees and costs under the Equal Access to Justice Act (EAJA).[7] (ECF No. 1:29-30).

## III. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through

---

[6] The same declaration states that Petitioner "is scheduled for a flight to Pakistan to depart on or about July 28, 2026." (ECF No. 14-1:3). That date had passed two months before the declarant signed the declaration, Petitioner was not removed, and the declaration elsewhere states that ICE will schedule Petitioner's departure only "[o]nce ICE-ERO obtains [his] travel documents." *Id.* Nor did Respondents notify the Court of any scheduled removal flight, as the Order for Response required. (ECF No. 9:2). Respondents offer no explanation. The undersigned reminds Respondents that their declarations are made under penalty of perjury. *See* 28 U.S.C. § 1746.

[7] To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## IV. LEGAL FRAMEWORK FOR THE DETENTION OR RELEASE OF NONCITIZENS SUBJECT TO A FINAL ORDER OF REMOVAL

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day period is known as the "removal period." *Id.* The removal period begins on the latest of: (1) the date the order of removal becomes administratively final; (2) the date of the court's final order when a removal order is judicially reviewed; or (3) the date the noncitizen is released from detention or confinement, unless the noncitizen is confined under immigration processes. *Id.* § 1231(a)(1)(B). During the removal period, detention is mandatory. *Id.* § 1231(a)(2)(A).

When the removal period lapses, the noncitizen generally must be released subject to supervision. *See id.* § 1231(a)(3). However, DHS retains the discretion to continue the detention of certain noncitizens beyond the removal period, including those removable on criminal grounds. *See id.* § 1231(a)(6); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022) ("After the removal period expires, the Government may detain only four categories of people (1) those who are inadmissible on certain specified grounds; (2) those who are removable on certain specified grounds; (3) those it determines to be a risk to the community; and (4) those it determines to be unlikely to comply with the order of removal."). Continued detention under § 1231(a)(6) triggers the "post-removal period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

Detention of a noncitizen subject to a final order of removal may not be indefinite. It is limited to "a period reasonably necessary to bring about that alien's removal from the United States," and it is presumptively reasonable for only six months. *Zadvydas*, 533 U.S. at 689, 701. Federal regulations therefore require ICE to release a noncitizen on an OOS if there is no significant likelihood that he will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)-(h); *see also Zadvydas*, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

Once ICE releases a noncitizen on an OOS, its authority to re-detain him is limited by its own regulations. ICE may revoke the OOS and return the noncitizen to custody if he violates the conditions of his release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Revocation "for either reason triggers a notification requirement and a review process." *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026). Specifically:

> **Revocation procedures.** Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.13(i)(3).

## V. DISCUSSION

### A. Section 241.13 Governs Petitioner's Release and the Revocation at Issue

Petitioner alleges that Respondents failed to comply with the INA and ICE's regulations before re-detaining him after his prior release on an OOS. (ECF No. 1:25-26). Agencies must follow their own regulations. *Accardi*, 347 U.S. at 265-68. "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

As a threshold matter, the Court must determine whether Petitioner was released under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, as each regulation contains distinct provisions governing revocation. *See Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *2 (W.D. Okla. Mar. 20, 2026) ("First, the Court is tasked with determining whether § 241.4 or § 241.13 applies. Although both regulations include provisions permitting Respondents to revoke an individual's Order of Supervision, there may be materially distinct requirements depending on which regulation applies.").[8] Section 241.4 is the default rule, while § 241.13 establishes "special review procedures" that apply once ICE

---

[8] *See also Grigorian v. Bondi*, No. 25-CV-22914, --- F. Supp. 3d ----, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025) ("Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where ICE has formally determined that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future.").

determines there is no significant likelihood of removal in the reasonably foreseeable future. *Bui*, 2026 WL 788947, at *2 (quoting 8 C.F.R. § 241.13(a)).

Respondents contend that ICE released Petitioner under 8 C.F.R. § 241.5 and that Petitioner therefore bears the burden of showing there is no significant likelihood of his removal under § 241.4. (ECF No. 11:3-5). The record does not support that position. ICE released Petitioner in January 2008, during his first *Zadvydas* challenge, after ICE was unable to obtain travel documents from Pakistan. *Zaidi v. Clement*, 2008 WL 906192, at *1 n.1, *2. The OOS states that Petitioner was released "[b]ecause the Service has not effected [his] deportation or removal during the period prescribed by law." *Zaidi v. Clement*, No. CIV-07-1119-HE, ECF No. 20-1:3. "[T]his exact language signals the individual was released because the government made a determination that there was no significant likelihood of removal in the reasonably foreseeable future." *Bui*, 2026 WL 788947, at *3 (citations omitted). Section 241.5, on which Respondents rely, does not suggest otherwise. That regulation governs the conditions of an OOS; it does not determine whether ICE released Petitioner because it found no significant likelihood of his removal. *See Bui*, 2026 WL 788947, at *6 n.6.

Respondents also state that HQPDU made its determination "pursuant to 8 C.F.R. § 241.13(i)," which applies only to noncitizens previously released under § 241.13. (ECF No. 11-1:3). And Respondents do not contend that Petitioner violated any condition of his release, so the revocation could rest only on changed circumstances under § 241.13(i)(2). Respondents cannot invoke § 241.13(i) to justify the revocation while relying on § 241.4 to shift the burden to Petitioner. On this record, the undersigned concludes that § 241.13 governs both Petitioner's release and the revocation at issue.

### B. Respondents Violated § 241.13(i)

Section 241.13(i)(2)-(3) imposes two requirements, one substantive and one procedural. *Majmaie v. Mullin*, No. CIV-26-1035-D, 2026 WL 1999252, at *3 (W.D. Okla. July 10, 2026), *adopted*, 2026 WL 2255074 (W.D. Okla. Aug. 5, 2026); *see Wonsehleay*, 2026 WL 2519454, at *5-6. Respondents violated both.

Respondents first failed to comply with § 241.13(i)(3). Petitioner alleges he never received notice of the reasons for revocation or an informal interview. (ECF No. 1:2-4, 15). Respondents respond only that ICE "conducted custody review in this matter in accordance with the regulatory framework." (ECF No. 11:4). Neither declaration states that Petitioner received notice of the reasons for revocation or a prompt interview, and Respondents filed no notice of revocation or record of any interview. The Warrant of Removal/Deportation ICE served on Petitioner does not identify the reasons for revocation. (ECF No. 11-6:1). It therefore does not satisfy § 241.13(i)(3), which "requires not just notice, but notice that specifies 'the reason for revocation of his or her release.'" *Bui*, 2026 WL 788947, at *3 (quoting 8 C.F.R. § 241.13(i)(3)); *Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1397059, at *3 (W.D. Okla. May 19, 2026), *adopted*, 2026 WL 1495209 (W.D. Okla. May 28, 2026).[9] Nor could the 90-day custody interview that ICE allegedly conducted nearly three months later cure the violation. Such "substituted notice" "is not sufficient under § 241.13(i)(3)." *Bui*, 2026 WL 788947, at *3; *see Majmaie*,

---

[9] *See also Wonsehleay*, 2026 WL 2519454, at *5 (explaining that the "reasons for revocation" ICE must provide "cannot be conclusory" and that "ICE must identify the specific facts supporting its decision"); *Alizadeh v. Mullin*, No. CIV-26-1316-HE, 2026 WL 2280713, at *3 (W.D. Okla. Aug. 7, 2026) (finding inadequate notice where the officer's declaration did "not state Petitioner received notice or an interview when taken into custody"); *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *6 (W.D. Okla. Oct. 15, 2025) ("ICE is required to issue a written decision. § 241.13(g)."), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025).

2026 WL 1999252, at *5 ("A custody review conducted months later, directed at the separate question of continued detention, is not that interview.").

Respondents also failed to establish changed circumstances under § 241.13(i)(2). Respondents bear the burden "to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025).[10] Section 241.13(i)(2) "contemplates an individualized determination made by the agency as the predicate for revocation, not a rationale assembled in litigation." *Wonsehleay*, 2026 WL 2519454, at *5. In making that determination, ICE must consider, among other things, the noncitizen's history of compliance, the Government's prior efforts to remove him, and the views of the Department of State regarding the prospects for removal. *See* 8 C.F.R. § 241.13(f); *Wonsehleay*, 2026 WL 2519454, at *5.

Respondents have not carried their burden. Their brief asserts that ICE re-detained Petitioner "based on this change in circumstances," namely the removal of 237 Pakistani citizens in 2025. (ECF No. 11:3). Their own declarant tells a different story. According to the declarant, ICE took Petitioner into custody because, "[u]pon reviewing checks, it was determined that Petitioner was in the United States without authorization and with a Final Order of Removal," which had been true since 2007. (ECF No. 11-1:2). And HQPDU supposedly did not determine that changed circumstances existed until April 16, 2026, 108 days after Petitioner was taken into custody. (ECF No. 11-1:3). "A determination that

---

[10] *See also Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *3 (W.D. Okla. Feb. 20, 2026) (detention "may be maintained only upon compliance with applicable process" (quoting *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 440 (S.D. Tex. 2025))); *Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025) (same); *Majmaie*, 2026 WL 2255074, at *2; *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding it was burden of ICE to demonstrate substantial likelihood of removal in the reasonably foreseeable future existed at the time of re-detention).

must exist at the time of revocation cannot be supplied by efforts undertaken weeks or months after the fact." *Majmaie*, 2026 WL 1999252, at *4.[11]

Respondents' reliance on aggregate removal statistics is similarly insufficient. (ECF No. 11:3). Courts in this District have repeatedly rejected the notion that an increase in removals to a particular country establishes changed circumstances under § 241.13(i)(2). *See Pham*, 2025 WL 3243870, at *2 (An "increase in frequency of removals alone does not demonstrate [a] significant likelihood of removal in the reasonably foreseeable future."); *Tran*, 2026 WL 1181700, at *3 (a general "upswing" in a country's "willingness to repatriate" its nationals does not supply the individualized determination § 241.13(i)(2) requires); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (rejecting declarations that did not identify any country that had agreed to accept the petitioner); *Wonsehleay*, 2026 WL 2519454, at *5.[12] Indeed, ICE removed 85 Pakistani citizens in fiscal year 2024 while Petitioner remained on supervision. (ECF No. 11-1:4). And ICE has requested travel documents for Petitioner and predicted his removal before; both efforts failed. *Zaidi v. Clement*, 2008 WL 906192, at *1 n.1; (ECF No. 11-1:3). Respondents do not explain what has changed as to Petitioner. *See Bui*, 2026 WL 788947, at *4-5.

### C. These Violations Warrant Habeas Relief

Courts in this District have repeatedly held that ICE's failure to comply with § 241.13(i) in revoking an OOS renders the revocation unlawful and warrants habeas

[11] *See also Wonsehleay*, 2026 WL 2519454, at *5 (finding no changed-circumstances determination where ICE did not request a travel document until thirty days after re-detention).

[12] *See also Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *5 (W.D. Okla. Mar. 6, 2026); *Bui*, 2026 WL 788947, at *4; *Majmaie*, 2026 WL 2255074, at *2.

relief. *See Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *10 (W.D. Okla. Jan. 26, 2026); *Owdetallah*, 2026 WL 483648, at *5-6; *Tran*, 2026 WL 1181700, at *3; *Bassam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382, at *3 (W.D. Okla. June 26, 2026) ("ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and . . . his release is therefore appropriate under 28 U.S.C. § 2241(c)(3).").[13] Because these minimum procedures secure the process the Fifth Amendment requires, a wholesale failure to provide them "implicates those constitutional protections directly." *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026) (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025)); *see Wonsehleay*, 2026 WL 2519454, at *6; *Pham*, 2025 WL 3243870, at *1 (collecting cases).

Respondents' contention that Petitioner must show prejudice rests on authority that does not exist. (ECF No. 11:6).[14] And in any event, "the harmless error doctrine does not apply here," because "regulatory violations under § 241.13 implicate due process concerns even without a prejudice inquiry." *Thabata*, 2026 WL 1495209, at *2 (quoting *Owdetallah*, 2026 WL 483648, at *4-6).[15] Without notice of the reasons for revocation, Petitioner "was denied a meaningful opportunity, at a meaningful time, to contest the

---

[13] *See also Ye*, 2025 WL 3485420, at *2; *Thabata*, 2026 WL 1495209, at *2; *Alizadeh*, 2026 WL 2388908, at *1; *Majmaie*, 2026 WL 2255074, at *2-3; *Bui*, 2026 WL 788947, at *3-5; *Hamidi*, 2025 WL 3452454, at *4; *Nguyen v. Bondi*, No. CIV-25-1402-D, 2026 WL 396548 (W.D. Okla. Feb. 12, 2026).

[14] Respondents have since acknowledged that the quotation and case citation on which they relied "do not exist." (ECF No. 16:1). The undersigned appreciates counsel's candor in bringing the error to the Court's attention. *See* Fed. R. Civ. P. 11(b)(2).

[15] *See also Alizadeh*, 2026 WL 2388908, at *1 (rejecting the respondents' argument that their regulatory violations were harmless); *Nguyen v. Bondi*, No. CIV-26-0056-HE, 2026 WL 1034405, at *1 (W.D. Okla. Apr. 16, 2026); *Li*, 2026 WL 475133, at *3 (rejecting the Government's arguments that a violation of § 241.13 can be harmless and that § 2241 relief is unavailable for a regulatory violation); *Tran*, 2026 WL 1181700, at *3.

revocation of his release." *Bui*, 2026 WL 788947, at *3. Petitioner is therefore in custody in violation of the laws of the United States. 28 U.S.C. § 2241(c)(3).

### D. Independently, Petitioner Is Entitled to Relief Under Zadvydas

Even if Respondents had complied with § 241.13, Petitioner would be entitled to relief because Respondents have not shown that his removal is significantly likely in the reasonably foreseeable future. *See Alizadeh*, 2026 WL 2280713, at *4, *adopted*, 2026 WL 2388908, at *1 (W.D. Okla. Aug. 17, 2026) (concurring that the petitioner was entitled to relief under both the regulations and *Zadvydas*); *Bui*, 2026 WL 788947, at *5. After six months, the petitioner "must show 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" and the Government "must 'then respond with evidence sufficient to rebut that showing' or release the individual." *Alizadeh*, 2026 WL 2280713, at *4 (quoting *Bui*, 2026 WL 788947, at *5). And "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. Petitioner's current detention has exceeded six months.[16]

Petitioner has met his burden. Pakistan has not issued travel documents for Petitioner in nearly two decades, ICE's 2007 prediction of imminent removal proved wrong, Petitioner has no passport or birth certificate, and Pakistan still has not confirmed his identity or nationality more than nine months into his renewed detention. *See Bui*,

[16] Petitioner argues that his roughly ten months of post-order detention in 2007 and 2008 should be aggregated with his current detention. (ECF No. 1:2-3, 21-22). The Court need not decide that question, because his current detention, which began on December 29, 2025, has itself exceeded six months. Although Petitioner filed the Petition shortly before that point, Respondents do not argue that his claim is premature, and courts have permitted *Zadvydas* claims to proceed where they ripen during the pendency of the case. *See Majmaie*, 2026 WL 1999252, at *7; *Momennia*, 2025 WL 3011896.

2026 WL 788947, at *5. In response, Respondents offer only removal statistics and their declarant's assurance that ERO "remains confident" that travel documents will issue. (ECF No. 11-1:4). That is not enough. *See Alizadeh*, 2026 WL 2388908, at *1 ("The mere fact that respondents have successfully facilitated removals of Iranian citizens to Iran or to a third country is not sufficient to rebut petitioner's showing."); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) (rejecting conclusory declaration), *adopted*, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025); *Bui*, 2026 WL 788947, at *5 (Government must offer more than "generalized evidence"); *Thabata*, 2026 WL 1495209, at *2 ("[S]uch prolonged silence reinforces that removal is not significantly likely in the reasonably foreseeable future."); *Nfumu v. Grant*, No. CIV-25-1574-J, 2026 WL 637618, at *2 (W.D. Okla. Mar. 6, 2026). Petitioner's continued detention is therefore unlawful. *Zadvydas*, 533 U.S. at 701.

**E. Appropriate Remedy**

The appropriate remedy is release subject to an appropriate OOS. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."); *Wonsehleay*, 2026 WL 2519454, at *7; *Thabata*, 2026 WL 1397059, at *5; *Alizadeh*, 2026 WL 2388908, at *2 (ordering release "within three (3) business days of the date of this order, subject to an appropriate order of supervision"); *Bui*, 2026 WL 788947, at *6 & n.6; *Majmaie*, 2026 WL 2255074, at *3.[17]

[17] Petitioner asks to be released subject to the conditions of his prior OOS. (ECF No. 1:29). Consistent with *Wonsehleay*, *Alizadeh*, and *Bui*, the undersigned recommends release under an appropriate OOS.

Petitioner also asks the Court to enjoin Respondents from re-detaining him under § 241.13(i)(2) unless and until they obtain a travel document. (ECF No. 1:29). The undersigned recommends that the Court grant that request. A habeas court "has broad discretion in conditioning a judgment granting habeas relief," and is "authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Twice now, ICE has detained Petitioner on the premise that his removal to Pakistan was imminent, and twice that premise has failed. In 2007, ICE told this Court that travel documents would issue and that Petitioner would be on a flight the next day; they did not, and he was not. *Zaidi v. Clement*, 2008 WL 906192, at *1 n.1. In 2025, ICE re-detained Petitioner without first making any changed-circumstances determination, and more than nine months later it still has no travel document and has reported a removal flight that supposedly was scheduled but never occurred. (ECF No. 14-1:3). Absent an injunction, nothing would prevent ICE from re-detaining Petitioner at his next check-in on the same showing.

This relief does not interfere with Respondents' authority to execute Petitioner's removal order, so it does not implicate 8 U.S.C. § 1252(g). Once Respondents obtain a valid travel document, they may take Petitioner into custody to effect his removal, consistent with the governing regulations. *See Majmaie*, 2026 WL 2255074, at *3 n.2 (recognizing that "the actual receipt of a travel document" may constitute "the type of changed circumstance that would allow for compliance with § 241.13(i)(2)"). Nor does it limit Respondents' authority to revoke Petitioner's release if he violates the conditions of his supervision. *See* 8 C.F.R. § 241.13(i)(1).

### F. The Court Should Decline to Address Petitioner's Remaining Claims and Requests

Because the undersigned recommends granting habeas relief on these grounds, the Court should decline to address Petitioner's remaining claims, including his claim that his detention is punitive. *See Wonsehleay*, 2026 WL 2519454, at *7; *Ye*, 2025 WL 3485420, at *2 n.2; *Hamidi*, 2025 WL 3452454, at *2 n.2; *Majmaie*, 2026 WL 2255074, at *2 n.1. The Court should also decline to reach Petitioner's APA claim because his § 2241 petition supplies an adequate remedy. *See* 5 U.S.C. § 704; *Soberanes*, 388 F.3d at 1310. Petitioner's requests for declaratory relief require no action.

Petitioner's request to enjoin his removal to a third country is not ripe. Respondents seek to remove Petitioner to Pakistan, and nothing in the record suggests they intend to remove him elsewhere. (ECF No. 14-1:3). Ripeness doctrine prevents courts "from entangling themselves in abstract disagreements over administrative policies" before an administrative decision "has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). The Court should therefore deny that request without prejudice. *See Wonsehleay*, 2026 WL 2519454, at *7.[18]

---

[18] Petitioner also asks the Court to bar his transfer out of Oklahoma. (ECF No. 1:29-30). The Court lacks jurisdiction to grant that request, because the decision where to detain a noncitizen pending removal is committed to the agency's discretion. *See* 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii); *Wonsehleay*, 2026 WL 2519454, at *2 n.8; *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x 339, 343 (10th Cir. 2010); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999). And the recommended release would moot the request.

## VI. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition for habeas relief, order Respondents to release Petitioner within three business days subject to an appropriate Order of Supervision, and **ENJOIN** Respondents from re-detaining Petitioner under 8 C.F.R. § 241.13(i)(2) unless and until they obtain a valid travel document for his removal. The undersigned further recommends that the Court deny without prejudice as unripe Petitioner's request to enjoin his removal to a third country, deny Petitioner's request to bar his transfer, and order Respondents to certify compliance by filing a status report within ten business days of the Court's order and to provide a copy of the Court's order to the Warden of the Diamondback Correctional Facility.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **October 26, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VII. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on October 19, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE